**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Lester SMITH and Molly Smith, Defendants-Appellants.**

No. 77–5544.

United States Court of Appeals, Fifth Circuit.

May 10, 1978.

Rehearing Denied June 19, 1978.

James W. Matthews, Miami, Fla., for defendants-appellants.

Kevin M. Moore, Asst. U. S. Atty., J. V. Eskenazi, U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before SKELTON *, Senior Judge, and FAY and RUBIN, Circuit Judges.

SKELTON, Senior Judge.

Appellant, Lester Smith, owned and operated L & M Market, a local retail grocery store, as sole proprietor, at 7501 N.W. 22nd Avenue, Miami, Florida. In such capacity he was authorized under the provisions of Title 7, U.S.C.A. ¶ 2017, *et seq.* and Regulations pursuant thereto, 7 CFR 272.1 *et seq.*, to accept and redeem coupons under the food stamp program of the Department of Agriculture in accordance with such statutes enacted by Congress and the Regulations issued by such Department. His wife, appellant Molly (Mollie) Smith, worked for him as cashier in the store. She was an employee and did not own an interest in the L & M Market.

On October 29, 1973, Lester pleaded guilty and was convicted of the offense of knowingly acquiring and possessing food coupons at the L & M Market in a manner not authorized by the Food Stamp Act of 1964, Title 7, U.S.C., § 2011 et seq., in exchange for merchandise, in violation of Title 7, U.S.C., § 2023(b) and was placed on probation for a period of one year. Molly was not a party to that proceeding and was not involved therein.

Thereafter, the Department of Agriculture, acting through the Food and Nutrition Service (FNS) determined that the firm of Lester Smith, doing business as L & M Market, was disqualified from the Food Stamp Program for a period of one year because of his participation in six violative transactions described in a letter of charges

* Senior Judge of the United States Court of Claims, sitting by designation.

issued by FNS on May 10, 1974.[1] Lester Smith then sought administrative review of the decision of the FNS under the provisions of 7 CFR 273.1 *et seq.*, and, failing in this effort, sought judicial review under 7 CFR 273.10. Again, he was unsuccessful.[2]

Lester Smith, d/b/a L & M Market, was allowed under the Regulations to continue to accept food stamps during the pendency of his administrative and judicial reviews. Finally, when he had exhausted his administrative and judicial appeals, the FNS sought to implement and enforce its previous order disqualifying him from accepting food stamps for one year, beginning May 10, 1976. This was accomplished by sending an agent to the L & M Market to pick up the food stamp authorization card previously issued to Lester Smith d/b/a L & M Market. When the agent arrived at the store, Lester was not there. His wife, Molly Smith, told the agent the authorization card had been lost. The agent then asked her to sign a statement to that effect. She signed the statement as a representative of Lester Smith. The statement was also signed by Lester Smith, who returned to the store while the agent was still there. The statement is as follows:

### "STATEMENT

"This is to certify that I have lost, misplaced, or unintentionally destroyed United States Department of Agriculture Authorization Card No. 210851–8, which granted the right to accept Food Stamp Coupons for eligible foods in my store, L & M GROCERY & MARKET, 7501 NW 22 Avenue, Miami, Florida 33147.

"As the owner and/or duly authorized representative of this store, I wish to surrender and relinquish all the rights, privileges, and benefits granted by the above mentioned Authorization. Food Stamp Authorization is being surrendered for the following reason:

"LOST AUTHORIZATION CARD and 1-yr. DISQUALIFICATION as of 5/10/76.

"I understand that I cannot accept coupons until I have again applied for and received authorization from the U. S. Department of Agriculture."

(Signed)   Lester Smith
(Signed)   Mollie Smith

5–10–76

(Signed)   Lonnie Callaway
         Witness                    "

It will be noted that the statement is written in the first person and is signed by Lester Smith as owner of "my store, L & M Grocery and Market."[3] Molly Smith is shown to have signed the statement as a duly authorized representative. Lester Smith is the only person shown to be disqualified for one year, beginning May 10, 1976, from accepting food stamp coupons.

While in the store, the agent remarked to Lester that he was only "doing his job," whereupon, Lester said, "Don't worry about me. I have an ace in the hole." This statement by Lester becomes important when considered with subsequent events discussed below.

On June 28, 1976, appellant Molly Smith obtained a charter from the State of Florida for a corporation known as Progressive Marketing Company, Incorporated, which was authorized, among other transactions, to operate grocery stores, markets, and other retail outlets. The charter shows that the corporation was to have 50 shares of capital stock without nominal or par value and was to have capital of $500. The charter shows further that Molly Smith had "agreed to take" 10 shares of stock, and that the 3 directors and officers were:

Mollie Lee Smith, President

Columbus Smith, Secretary/Treasurer

Rosa Bell Smith, Vice-president[4]

Lester Smith d/b/a L & M Market executed and delivered a bill of sale to the corporation on June 28, 1976, whereby in

---

1. The letter of charges of May 10, 1974, is not in the record.

2. These administrative and judicial proceedings are not in the record.

3. The store is variously referred to as "L & M Market" and "L & M Grocery and Market."

4. Columbus and Rosa Bell Smith are the parents of Lester Smith.

consideration of $10 and O G and VC [5] he sold "The entire stock, inventory, and equipment of L & M Market (inventory attached)" to the corporation.

The inventory attached to the bill of sale is dated 3–8–74, more than 2 years prior to the date of the bill of sale. It only lists various items of furniture and equipment, such as cases, freezers, cooler, shelving and counters. The stock of goods and merchandise on hand were not listed or mentioned in the inventory. The trade name, goodwill, and business of L & M Market were not mentioned in the bill of sale or inventory.

On June 29, 1976, appellant, Mollie Lee Smith, in her capacity as president, filed an application for the corporation with the FNS of the Department of Agriculture for authority to participate in the food stamp program at the same address and in the same building used and occupied by Lester Smith d/b/a L & M Market.

No food stamps were accepted at the store between May 10, 1976, and June 29, 1976, the date of the filing of the corporation's application. However, food stamps were accepted after June 29, 1976. Molly Smith testified that she thought the corporation was eligible to receive the coupons after it filed its application for authority to participate in the program.

Lester and Molly Smith continued working in the store after the transfer to the corporation in the same manner as they had worked for Lester Smith d/b/a L & M Market. There was no change in the appearance of the building. The old "L & M Market" sign painted on the front of the building was not changed. Newspaper advertisements in the *Miami Times* of July 15 and July 31, 1976, which are in evidence, appeared in the name of "L & M Market." Both advertisements contained the statement "We accept Food Stamps" and gave the address of the old L & M Market.

The FNS denied the application of the corporation on August 8, 1976, stating its reasons, in pertinent part, as follows:

"Mrs. Mollie Lee Smith, President
Progressive Marketing Co., Inc. d/b/a
L & M Grocery
7501 N.W. 22nd Avenue
Miami, Florida 33147

Dear Mrs. Smith:

This is to notify you that your application for participation as an authorized retailer in the Food Stamp Program dated June 29, 1976, is denied. This determination is based on the fact that:

It is our finding that approval of your request for authorization to participate in the Food Stamp Program would not effectuate the purpose of the program. Although you state that your corporation has purchased L & M Grocery, you have not provided a bill of sale to show that the store has changed ownership. Furthermore, L & M Grocery, under the ownership of your husband, Lester Smith, was disqualified from the Food Stamp Program for a period of one year effective May 10, 1976, because of the participation of you and your husband in six violative transactions as outlined to your husband in our letter of charges of May 10, 1974. Therefore, we view your application as an attempt to circumvent the disqualification determined by the U. S. Department of Agriculture, and your application is denied."

After receiving this denial, the corporation requested administrative review and furnished the FNS with a copy of the above-described bill of sale and also an affidavit of Molly Smith dated June 29, 1976, that she was the sole stockholder of the corporation; that it had purchased the business formerly known as L & M Grocery & Market formerly owned by her husband, Lester Smith; and that Lester Smith had no interest in the corporation.

In the meantime, Lester and Molly Smith continued to accept food stamps at the

5. We assume that "O G and VC" meant "other good and valuable consideration." There is no showing what it consisted of, nor that it, or the

$10, were ever paid to Lester Smith by the corporation.

store, notwithstanding the fact that the application of the corporation had been denied. Undercover agents of the FNS purchased items of merchandise at the store from Lester and Molly Smith with food stamps on September 14 and 16, October 19 and 20, and on November 11, 1976.

Based on the foregoing purchases, the appellant, Lester Smith, was indicted on 5 counts of unlawfully accepting food stamps, and appellant, Molly Smith, on 3 counts of unlawfully accepting food stamps, all in violation of Title 7, U.S.C., § 2023(b). The appellants were tried together before a jury. At the close of the evidence, and after hearing the court's charge and argument of counsel, the jury returned a verdict of guilty with respect to Lester Smith on counts 1, 3, 5, and 8, and not guilty as to count 6. With respect to Molly Smith, the jury returned a verdict of guilty as to count 2, and not guilty as to counts 4 and 7. Whereupon, the court sentenced Lester Smith to one year confinement on counts 1, 3, 5, and 8, to run concurrently, with confinement of 3 months in a jail-type institution and the remainder of the sentence suspended, and after discharge he was to be placed on probation for 2 years. The court withheld a sentence of confinement of Molly Smith as to count 2 and placed her on probation for 2 years. Both Lester and Molly Smith appealed their convictions to this court.

Each of the counts in the indictment as to both appellants are alike and charge that on a designated date one or the other appellant (naming him or her) did knowingly, wilfully and unlawfully accept, acquire, and possess food coupons (issued by the Food and Nutrition Service of the Department of Agriculture) of a value less than $100.00, in a manner not authorized by the Food Stamp Act of 1964, Title 7, United States Code, Section 2011, et seq., or the regulations issued pursuant to said Act by accepting $40.00 in Food Stamp Coupons from a Special Agent of the United States Department of Agriculture in exchange for merchandise after having previously been lawfully disqualified from participation in the Food Stamp Program for a period of one year commencing May 10, 1976; all in violation of Title 7, United States Code, Section 2023(b) [6].

As pointed out above, prior to October 29, 1973, when Lester Smith pleaded guilty to a charge of violating the Food Stamp Act of 1964, he had made application to the FNS for authority to participate in the food stamp program and was granted such authority as Lester Smith d/b/a L & M Market in accordance with Title 7, U.S.C., § 2017 and the Regulations pursuant thereto.[7]

**6.** Title 7, U.S.C., Sec. 2023(b) provides as follows:

"(b) Whoever knowingly uses, transfers, acquires, alters, or possesses coupons or authorization to purchase cards in any manner not authorized by this chapter or the regulations issued pursuant to this chapter shall, if such coupons or authorization to purchase cards are of the value of $100 or more, be guilty of a felony and shall, upon conviction thereof, be fined not more than $10,000 or imprisoned for not more than five years or both, or, if such coupons or authorization to purchase cards are of a value of less than $100, shall be guilty of a misdemeanor and shall, upon conviction thereof, be fined not more than $5,000 or imprisoned for not more than one year, or both."

**7.** Title 7, U.S.C., § 2017 provides, in pertinent part, as follows:

"§ 2017. Approval of retail food stores and wholesale food concerns—Applications; qualifications of applicants; factors considered; issuance of certificate

(a) Regulations issued pursuant to this chapter shall provide for the submission of applications for approval by retail food stores and wholesale food concerns which desire to be authorized to accept and redeem coupons under the food stamp program and for the approval of those applicants whose participation will effectuate the purposes of the food stamp program. In determining the qualifications of applicants there shall be considered among such other factors as may be appropriate, the following: (1) the nature and extent of the retail or wholesale food business conducted by the applicant; (2) the volume of coupon business which may reasonably be expected to be conducted by the applicant retail food store or wholesale food concern; and (3) the business integrity and reputation of the applicant. Approval of an applicant shall be evidenced by the issuance to such applicant of a nontransferable certificate of approval.

Submission of information by stores and concerns; disclosure of information

(b) Regulations issued pursuant to this chapter shall require an applicant retail food store

On May 10, 1976, he was disqualified from further participation in the food stamp program under the authority of Title 7, U.S.C., § 2020 and the Regulations issued thereunder.[8]

During oral argument before us, counsel for the Government contended that authority to participate in the food stamp program is granted to a "retail food store," namely, a physical building structure and not to a person or other legal entity. He made the same argument as to the disqualification of a "retail food store." We do not agree. Section 2017, *supra,* requires that a person or other legal entity must file an application for authorization to participate in the program, and, in connection therewith, must furnish certain information. Obviously, this could not be done by a building, but must be done by the person or firm doing business in the building. The Regulations are even clearer in this regard than the Statutes. Such Regulations refer to applicants as "firms." [9]

The Regulations also refer to retail food stores as "firms" in connection with their disqualification to participate further in the program and with reference to requests for review. See 7 CFR 272.6 and 7 CFR 273.-5.[10]

or wholesale food concern to submit information which will permit a determination to be made as to whether such applicant qualifies, or continues to qualify, for approval under the provisions of this chapter or the regulations issued pursuant to this chapter. Regulations issued pursuant to this chapter shall provide for safeguards which restrict the use or disclosure of information obtained under the authority granted by this subsection to purposes directly connected with administration and enforcement of the provisions of this chapter or the regulations issued pursuant to this chapter."

**8.** Title 7, U.S.C., § 2020, provides as follows:
"§ 2020. Disqualification of retail stores and wholesale concerns

Any approved retail food store or wholesale food concern may be disqualified from further participation in the food stamp program on a finding, made as specified in the regulations, that such store or concern has violated any of the provisions of this chapter, or of the regulations issued pursuant to this chapter. Such disqualification shall be for such period of time as may be determined in accordance with regulations issued pursuant to this chapter. The action of disqualification shall be subject to review as provided in section 2022 of this title."

**9.** In this regard, 7 CFR 272.1 provides, in pertinent part, as follows:
"§ 272.1 Approval of retail food stores, wholesale food concerns, and meal services.

(a) Firms desiring to participate in the program shall file an application with FNS, in such form as FNS may prescribe.

(b) An applicant shall provide sufficient data on the nature and scope of the firm's business for FNS to determine whether such applicant's participation will effectuate the purposes of the program. In making such determination FNS shall consider:

(1) The nature and the extent of the food business conducted by the applicant:
(2) The volume of food stamp business which may be reasonably expected to be done by the applicant;
(3) The business integrity and reputation of the applicant; and
(4) Such other factors as FNS considers pertinent to the application under consideration."

.    .    .    .    .

"(e) Upon approval, FNS shall issue a non-transferable authorization card to the firm. Such authorization card shall be retained by the firm until superseded, surrendered, or revoked as provided in this part.
(f) FNS shall deny the application of any firm if it determines that such firm's participation will not effectuate the purposes of the program. FNS will not consider the participation of a retail food store as effectuating the purposes of the program unless its food sales include staple foods for home preparation which are most needed in the diets of eligible households. If FNS determines that a firm does not qualify for participation in the program, a notice to that effect shall be issued to the firm. Such notice shall be delivered by certified mail or personal service. If such firm is aggrieved by such action, it may seek administrative review of such action as provided in § 272.8."

**10.** "§ 272.6 Disqualification of retail food stores, meal services and wholesale food concerns.

(a) Any authorized retail food store, authorized meal service, or authorized wholesale food concern may be disqualified from further participation in the program by FNS for a reasonable period of time, not to exceed three years, as FNS may determine, if such firm fails to comply with the Food Stamp Act or the provisions of this part; except that, if the disqualification is based on failure of such firm to pay a monetary claim determined by FNS pur-

■ We hold that the term "retail food store" in the Statutes and Regulations involved here means the owner and operator of a firm doing a retail food business in a building at a designated location, whether the owner is a sole proprietorship, a partnership, a corporation, or some other legal entity.

■ Applying these principles to the instant case we conclude that the retail food store involved here was Lester Smith doing business as L & M Market as sole proprietor, in a building located at the designated address. In such capacity, he alone was authorized to participate in the food stamp program. He alone pleaded guilty to the charge of violating the Food Stamp Act in 1973 and by reason thereof he alone was disqualified from participating in the program as L & M Market for one year beginning May 10, 1976.[11]

suant to § 272.7, such disqualification may be continued until such claim is paid. Any firm which has been so disqualified and which desires to be reinstated upon the end of the period of disqualification or at any time thereafter shall file a new application so that FNS may determine whether reinstatement is appropriate under the provisions of this part. Such an application may be filed starting ten days before the end of the period of disqualification.

(b) Any firm considered for disqualification under paragraph (a) of this section shall have full opportunity to submit to FNS information, explanation, or evidence concerning any instances of non-compliance before a final determination is made by FNS as to the administrative action to be taken. Prior to such determination, the firm shall be sent a letter of charges by the appropriate Regional Office, FNS. The letter shall specify the violations or actions which FNS believes constitute a basis for disqualification. Such letter shall inform the firm that it may respond either orally or in writing to the charges contained therein within ten days of the mailing date thereof, which response shall set forth a statement of evidence, information, or explanation pertaining to the specified violations or acts. Such response, if any, shall be made to the Officer-In-Charge, FNS Field Office, who has responsibility for the project area in which the firm is located.

(c) The letter of charges, the response, and such other information as may be available to FNS shall be reviewed and considered by the Chief, Retailer-Wholesaler Branch, Food Stamp Division, who shall then issue his determination.

(d) The determination of the Chief, Retailer-Wholesaler Branch, Food Stamp Division, shall be final and not subject to further administrative or judicial review unless a written request for review is filed within ten days in accordance with § 272.8.

(e) The mailing by certified mail or delivery by personal service of any notice required of FNS by this part will constitute notice to the addressee of its contents."

"§ 273.5 Manner of filing requests for review.

(a) Requests for review submitted by firms shall be mailed to or filed with 'Food Stamp Review Officer, FNS, U. S. Department of Agriculture, Washington, D. C. 20250.'

(b) Such requests shall be in writing and shall state the name and business address of the firm involved, and the name, address and position with the firm of the person who signed the request. The request shall be signed by the owner of the firm, an officer or partner of the firm, or by counsel, and need not be under oath.

(c) Such a request shall be filed with the Food Stamp Review Officer within ten calendar days of the date of delivery of the notice of the action for which review is requested. For the purpose of determining whether such a request was timely filed, the filing date shall be deemed to be the postmark date of the request, or equivalent if the written request is filed by a means other than mail.

§ 273.6 Content of requests for review.

(a) Requests for review shall clearly identify the administrative action from which the review is requested. Such identification shall include the date of the letter or other written communication notifying the firm of the administrative action, the name and title of the person who signed such letter or other communication, and whether the action under appeal concerns a denial of an application for participation, a disqualification from further participation, or a denial of all or any part of a claim.

(b) Such requests shall include information in support of the request showing the grounds on which the review is being sought from the administrative action, or it shall state that such information will be filed in writing at a later date. In such event, the Food Stamp Review Officer shall notify the firm of the date by which such information must be filed. The firm requesting review may ask for an opportunity to appear before the Food Stamp Review Officer in person: *Provided,* That any information so submitted in person shall, if directed by the Food Stamp Review Officer, be reduced to writing by the firm and subsequently filed with the Food Stamp Review Officer within such period as he shall specify."

11. Appellant, Molly Smith, did not own the L & M Market. She was never authorized to participate in the food stamp program and, consequently, was not qualified to do so. She was not charged in the 1973 indictment with Lester

We now reach the question of whether or not the convictions and sentences of the appellants should be affirmed. We consider first the case against Lester Smith.[12] There is no question about the fact that he was disqualified for one year beginning May 10, 1976, from accepting food stamps as the owner and sole proprietor of L & M Market. It is also undisputed that he accepted food stamps in the L & M Market building during the year of his disqualification on the dates alleged in the indictment. The only question is whether he accepted the food stamps in the capacity of Lester Smith d/b/a L & M Market or in the capacity of an employee of Progressive Marketing Company, Incorporated. There is sufficient evidence, though it is not overwhelming, to support a belief and finding by the jury beyond a reasonable doubt that the transfer of the L & M Market to the corporation was not an arm's length transaction, but was Lester Smith's "ace in the hole," and was a sham and a subterfuge to avoid Lester Smith's disqualification. The FNS so stated in its letter of August 8, 1976, quoted above, in which it denied the application of the corporation. In that letter, which was introduced into evidence by the appellants, the FNS stated:

"_ _ _ (W)e view your application as an attempt to circumvent the disqualification determined by the U. S. Department of Agriculture. _ _ _"

The pertinent facts surrounding the transfer of L & M Market to the corporation are fully described above and will not be repeated here. The jury could have concluded that the transfer was not a bona fide transaction, though the Government's case could have been stronger in that regard. Under such circumstances, the transfer was a nullity as far as this case is concerned and the continued operation of the store after the alleged transfer must be deemed to have been by the owner Lester Smith d/b/a

L & M Market. Therefore, the jury correctly found him guilty of violating the Food Stamp Act of 1964 as charged in counts 1, 3, 5 and 8 of the indictment. His conviction and sentence should be affirmed.

The case against Molly Smith is quite different to that against Lester Smith. It will be recalled that she was not the owner of L & M Market and had never been authorized or qualified to participate in the food stamp program. She was not disqualified for a period of one year from participation in the food stamp program, nor for any other period of time, as she had never been a participant in the program. She worked as an employee of Lester Smith d/b/a L & M Market in the L & M Market building. Yet she was indicted and found guilty as to count 2 of the indictment which charged:

"COUNT II

On or about September 16, 1976, at Miami, Florida, in the Southern District of Florida, the defendant, MOLLY SMITH, did knowingly, wilfully and unlawfully accept, acquire and possess food coupons (issued by the Food and Nutrition Service of the United States Department of Agriculture) of a value less than $100.00, in a manner not authorized by the Food Stamp Act of 1964, Title 7, United States Code, Section 2011, et seq., or the regulations issued pursuant to said Act by accepting $38.00 in Food Stamp Coupons from a Special Agent of the United States Department of Agriculture in exchange for merchandise after having previously been lawfully disqualified from participation in the Food Stamp Program for a period of one year commencing May 10, 1976; all in violation of Title 7, United States Code, Section 2023(b)."

As may be seen from the indictment, Molly Smith was charged with unlawfully accepting food coupons "in a manner not authorized by the Food Stamp Act of 1964,"

---

Smith, and was not disqualified along with him from accepting food stamps for a period of one year beginning May 10, 1976.

**12.** At the conclusion of the evidence, appellants presented to the court a motion for acquittal on the grounds of insufficiency of the evidence and a variance between the proof and the allegations in the indictment. The court denied the motion.

"*by accepting* $38.00 in food stamp coupons in exchange for merchandise *after having previously been lawfully disqualified from participation in the Food Stamp Program for a period of one year commencing May 10, 1976.*" (Emphasis supplied.)

There was no evidence that Molly Smith was ever disqualified from participation in the food stamp program for a period of one year as charged in the indictment. The signing of the statement regarding the lost authorization card by her in a representative capacity was not enough to disqualify her for one year along with Lester Smith. The district attorney argued that this part of the indictment was surplusage and that Molly Smith could be convicted on the words "in a manner not authorized by the Food Stamp Act of 1964" in the indictment. We do not agree. This would amount to taking the words out of context. The main thrust of the indictment and the gravamen of the charge was accepting food stamps during a disqualification period. The indictment was specific on this point. It described and detailed the "manner not authorized" when it said "by accepting" the coupons during a one-year period of disqualification. It was incumbent on the prosecution to prove the allegations in the indictment beyond a reasonable doubt. It wholly failed to do so. The trial court should have granted Molly Smith's motion for acquittal. Her conviction and sentence must be set aside and the case against her dismissed.

Accordingly, we affirm the judgment of conviction and sentence of Lester Smith. We set aside and vacate the judgment of conviction and sentence of Molly Smith and remand that part of the case to the trial court with instructions to dismiss the case against her.

AFFIRMED in part and REVERSED in part.